C. D. HELLEN, Appellee, v. NORTHERN TRUST & SAVINGS BANK, Appellant.

**BILLS AND NOTES:** Validity—Fraud—Action to Cancel and Enjoin.
1  A surety on a negotiable promissory note for the pre-existing indebtedness of the principal may have the note canceled and its negotiation by the original payee enjoined, on a showing that the surety was fraudulently induced by the principal to sign the note. Pre-eminently is this true (1) when the principal delivered the note after his authority so to do had been revoked, and (2) when the original payee had knowledge of the fraud both before he *received* the note and before he had *accepted* it.

**BILLS AND NOTES:** Delivery—Cancellation of Authority. Demand
2 by a surety on the principal for the surrender of the note which
the surety had been fraudulently induced to sign, works a revoca-
tion of all authority in the principal to deliver the note to the
payee.

**BILLS AND NOTES:** Validity—Payee Adopting Fraud of Maker.
3 The payee of a negotiable promissory note who receives and ac-
cepts the note with knowledge that the principal had fraudulently
induced the surety to sign the note, thereby makes himself a party
to the fraud by which the signature of the surety was obtained.

Headnote 1: 9 C. J. p. 1193; 32 C. J. p. 153. Headnote 2: 8 C. J.
p. 259. Headnote 3: 8 C. J. p. 498.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

JUNE 25, 1925.

ACTION in equity for the cancellation of a promissory note
and to enjoin its transfer for hypothecation by the payee. De-
cree as prayed, and the defendant appeals.—*Affirmed.*

*Harry Hansen* and *Fred A. Utterback,* for appellant.

*C. J. Eller* and *George E. Hise,* for appellee.

STEVENS, J.—The appellee, plaintiff below, prays the can-
cellation of a negotiable promissory note signed by him and one
M. R. Davis, and to enjoin the payee from transferring or hy-
pothecating it. The consideration for the note
was the antecedent debt of Davis to appellant.
On or about April 3, 1923, Davis, who kept a
checking account in the Northern Trust & Sav-
ings Bank, appellant herein, deposited a check for $5,000, pur-
porting to have been drawn by one C. H. Curtis on the First
National Bank of Miamisburg, Ohio. The check was fraudu-
lent, and the signature thereon a forgery. Before discovering
the fraud, appellant permitted Davis to withdraw funds from
the bank until he became indebted thereto in the sum of $3,350.
At the time the $5,000 check was credited to his account, Davis
had about $35 in the bank. As soon as the fraudulent character

1. BILLS AND
NOTES: valid-
ity: fraud: ac-
tion to cancel
and enjoin.

of the check became known to the officers of appellant, demand was made upon Davis for the payment of the amount due, or that he give satisfactory security therefor. On or about April 17th, N. J. Ferring, president of the bank and one of the bank's attorneys, visited Davis, who was ill at his home in the west part of the city of Des Moines. At this time, Davis suggested that he believed that a man whom he named would sign a note with him. Thereupon, Ferring took a blank note from his pocket and filled it out for the signature of Davis and whomsoever he might be able to get to sign it with him as surety. Davis suggested that the party named by him did not have a telephone, and that he was then in the country, about five miles southeast of the city. Ferring, or the bank's attorney, suggested that they would drive out and inform the party that he desired to see him. This· they did. Although, at the time, the president of the bank was fully informed as to the fraudulent character of the transaction, and that the financial condition of Davis made it impossible for him to pay the note, they said nothing to the party visited, except to deliver the message that Davis wanted to see him. The trip to the country appears to have been without result. Subse-- quent visits were made by one or more officers of the bank and by its attorneys to the home of Davis. One of these visits was on the afternoon of April 23d. Mrs. Davis, at the request of her husband, about 5 o'clock in the afternoon, and while one or more of the representatives of the bank were present, telephoned the office of appellee. Appellee being absent from the office, Mrs. Davis requested that he call her residence when he came in. Appellee received this request sometime later, and, after calling the Davis home, went out there, arriving about 5:30. After signing the note and leaving the house, he became suspicious of the good faith of Davis, and drove to the home of a friend who resided near by, and told him what he had done. His friend, whose name was also Davis, told him that M. R. Davis was utterly insolvent and worthless financially. Appellee immediately drove, in his automobile, to a near-by drug store, and, about 6 o'clock, called Ferring, the president of the bank, and informed him that he had signed the note, of the representations made by Davis to induce him to do so, and that he desired to revoke the transaction.

There is some conflict in the testimony as to the conversation between appellee and Ferring. Appellee then returned immediately to the Davis home and demanded the return of the note to him. He was, however, informed that the note had already been delivered to one of the attorneys for the bank. The following morning, appellee visited the bank, where he had some conversation with two of its officers. The testimony of the officers of the bank and of appellee as to what was said on that occasion is in direct conflict. Later in the day, appellee served a written demand upon the bank for the note. The demand being refused, this action was commenced, a month later.

Davis abandoned his home in October, and his wife testified that she had heard nothing from him or of his whereabouts since the date of his departure. Appellee testified that, before he signed the note, Davis showed him a financial statement from which it appeared that he was worth over $40,000; that he said that a check for $5,000, signed by a party in Ohio, to whom he had sold his farm, had by some mistake been protested by the bank upon which it was drawn; that the matter would be straightened out in two or three days; and that appellee was taking no chance in signing the note. The testimony of appellee on this point is not disputed. Mrs. Davis testified that she found the note in the mattress of the bed, when she came to arrange the bed clothing for her husband, who was sitting up for a little while, and that it was still there when appellee went away the second time. She testified positively that the note was delivered to Hansen after the second visit of appellee. The only testimony which in any way controverts that of Mrs. Davis is that of the officers and attorneys of the bank as to the time when they finally left the bank and obtained the note from Davis. The recollection of these officers as to the precise minute when they left the bank, arrived at the Davis home, and closed the transaction, cannot outweigh the positive testimony of Mrs. Davis. Hansen, an officer of the bank and one of its attorneys, testified that Mrs. Davis informed him by telephone at 5 o'clock that the matter was all fixed, and that she had the money with which to make settlement. Another officer of the bank, whose name is also Hansen, thereupon made out duplicate deposit slips and gave them to the attorney who obtained

the note, which it is claimed was delivered to Hansen about 5:30 or 5:45. Ferring also testified that he alone had authority to accept the note, and that it was presented to him for final approval about 9 or 9:30 on the morning of April 24th.

It is unnecessary that any attempt be made to reconcile the conflicting testimony. The undisputed evidence is sufficient. No one disputes the claim of appellee that he was induced to sign the note by the fraudulent representations of Davis as to his financial condition. We are abidingly satisfied that the note was delivered to Hansen following the second visit of appellee to the Davis home. The truth of the testimony of Ferring that his final O. K. on the note was imperative before it could be accepted by the bank is conceded. Counsel have submitted the case in this court on the theory that the provision of the Negotiable Instruments Law as to bona-fide holders for value is applicable and controlling. The theory of counsel overlooks the well settled rule that, as between the original parties, the payee of a negotiable note is in the same situation as the payee of a nonnegotiable note, so far as defenses on the part of the maker are concerned. This is specifically provided by the Negotiable Instruments Act. Section 9518, Code of 1924. The bank parted with nothing for the note, the consideration therefor being the antecedent indebtedness of Davis. The bank is named as payee. The note by its terms became due in 30 days. It was revocable by a maker at any time before delivery. Section 9476, Code of 1924.

Appellee did all within his power to revoke the instrument. He notified the president of the bank, within a half hour after signing it, of the fraud that had been perpetrated, as testified to by him; or, as admitted by the officer, that he desired to revoke the instrument. He promptly demanded of Davis the surrender and return of the note. This revoked the authority of Davis to deliver it to the payee; and, if the payee received it thereafter, with knowledge of the fraud perpetrated upon appellee, who signed the instrument without any consideration on his part, or if the final acceptance of the note by the bank was after the president or some other officer thereof knew of the fraud, the act

2. Bills and notes: delivery: cancellation of authority.

3. Bills and notes: validity: payee adopting fraud of maker.

of acceptance was a ratification of the means by which the signature was obtained, the effect of which was to make the payee a party to the fraud. If this is not true morally, it certainly is in every legal sense. Had action been commenced upon the note at law against appellee, he could have set up all of the above matters as a defense. The conduct and statements of appellee are consistent in every detail, and are such as would be expected of anyone induced by fraud to sign a negotiable instrument under the circumstances proved.

The controlling facts are not in serious dispute, and the law applicable thereto is elementary. The decree of the court below is—*Affirmed*.

FAVILLE, C. J., and DE GRAFF and VERMILION, JJ., concur.